**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**TIMOTHY A. MAUK**

      Plaintiff,

vs.                                                             **No. CIV 99-1248 LCS**

**PRESBYTERIAN HEALTH PLAN,**

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment filed May 1, 2000, (*Doc. 18*) as well as Defendant's Motion for Summary Judgment on Plaintiff's Implied Breach of Contract Claim, filed August 11, 2000. (*Doc. 57*). The Court, having considered the arguments of counsel, record, relevant law, and being otherwise fully informed, finds that Defendant's Motions for Summary Judgment are both well taken and should be **granted.**

**I. BACKGROUND**

The following facts are not in dispute. Timothy Mauk (hereinafter "Mr. Mauk") is considered legally blind in his right eye. He wears corrective lenses that correct his vision to 20/200. (Pl.'s Mem. at 2). The Plaintiff commenced employment with Presbyterian Healthplan (hereinafter "Presbyterian") in January of 1999 as a temporary employee. (Def.'s Mem. at 1). Mr. Mauk's job encompassed reconciling customer accounts, determining premium charges, and preparing collection and termination letters. (Def.'s Mem. at 1). Mr. Mauk's immediate supervisor was Renee Vigil.

In April of 1999, the Plaintiff was interviewed by Ms. Vigil for a full time position. (Pl.'s Aff.).

At that interview, he presented to her a letter from his physician outlining his disability along with his resume. (Pl.'s Aff.). Ms. Vigil evaluated Mr. Mauk on a Standardize Interview Evaluation, dated April 30, 1999, where she determined that he presented strong to very strong skills in attention to detail, accuracy, organization, problem solving, accounting knowledge, and etc. (Pl.'s Ex. G). She also stated, in her evaluation, that he was a team player. (Pl.'s Ex. G). Ms. Vigil then filled out a Job Offer Summary, dated May 10, 1999, in which she stated that "Tim has been a temporary with us since January of '99. His accounting knowledge and his exceptional attention to detail is what is needed in our department." (Pl.'s Ex. H). On May 13, 2000, after working at PHP for over four months, Mr. Mauk was hired as a full time employee. (Def.'s Mem. at 3).

When Mauk was hired for a full time position, he received an Employee Handbook, which set forth an equal employment policy that prohibits discrimination on the basis of race, color, religion, sex, and disability. (Def.'s Mem. at 3). Mauk signed an Employment Agreement which stated that he understood that his "employment" could "be terminated in circumstances where PHS deems. . . appropriate." (Pl.'s Dep. At 72). Once Plaintiff started working full time, he found it difficult to read some of the smaller print found on certain documents. He therefore, requested rulers with magnification devices. (Def.'s Mem. at 4). Plaintiff believes that it took him longer than other colleagues who are without disability to read through information screens. (Def.'s Mem. at 4).

The Plaintiff disagrees with the Defendant's characterization of the following facts. Specifically, the Plaintiff asserts that Ms. Vigil did not meet with him to discuss problems with his work progress, regarding the duplicative letters, the deletion of customer accounts, and computational errors. (Def.'s Mem. at 4). The Plaintiff avers that although Ms. Vigil admits she made comments to the Plaintiff pertaining to his work progress, there was no formal counseling or

documentation pertaining to the matter. (Pl.'s Mem. at 6). The Defendant asserts that the Plaintiff "yelled" at a co-worker after she questioned the manner in which he had performed a task. (Def.'s Mem. at 5). The Plaintiff admits that he had a disagreement with the co-worker, but he felt that the co-worker was deliberately taking action to cast him in a negative light. (Pl.'s Mem. at 6). Both parties disagree as to those times that the Plaintiff arrived at work late. The Plaintiff asserts that he was on a "flex-time" schedule where he was afforded flexibility, provided that he work forty hours a week. (Pl.'s Mem. at 4). Mr. Mauk contends that he never failed to work a forty-hour week and that he was never approached by Ms. Vigil with respect to tardiness. (Pl.'s Mem. at 4).

On August 27, 1999, three and half months after he was hired, Mr. Mauk was fired from his full time position. (Pl.'s Mem. at 4). He contends that he was eventually given two reasons for his termination: the fact that he sent out duplicative letters and that he had a "poor attitude with co-workers." (Pl.'s Mem. at 4). Three days later, Mr. Mauk filed a charge of discrimination with the EEOC. (Def.'s Ex. E). And on October 28, 1999, he filed suit in United States District Court.

## II. STANDARD OF REVIEW

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact. " *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 157 (1970).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968)).  The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case.  *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter.  *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof.  *See Simms,* 165 F.3d at 1326.  It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion.  *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1313 (10th Cir.1999).  The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### III. ANALYSIS

#### A. Is the Defendant entitled to Summary Judgment with Respect to Plaintiff's claim based on the American with Disabilities Act?

Defendant asserts that it is entitled to summary judgment on Plaintiff's claim based on the

American with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12111(a). (Def's Mem. at 2). Presbyterian Health argues that the Plaintiff failed to establish a prima facie case of discrimination within the meaning of the ADA. (Def's Mem. at 7). Presbyterian also argues that the Plaintiff cannot prevail on a hostile work environment claim under the ADA because he did not exhaust his administrative remedies before bringing his claim. (Def's Mem. at 11).[1] Plaintiff asserts that he has presented sufficient evidence which gives rise to an inference of discrimination. (Pl.'s Mem. at 12). He also argues that even if the Defendant demonstrates a legitimate nondiscriminatory reason for taking the adverse action against the plaintiff, the proffered explanation was pretextual. (Pl.'s Mem. at 13).

The standard of review with respect to summary judgment motions regarding ADA claims is set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] This cardinal case established the basic allocation of burdens and order of presentation of proof. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981)(citing *McDonnell Douglas*, 411 U.S. 792). First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate

---

[1] The Plaintiff acknowledges that he no longer claims damages pursuant to the theory of hostile work environment. (Pl.'s Mem. at 1). Therefore, this Court will not analyze this issue since it is no longer a claim in the action. (Pl.'s Amend. Compl.).

[2] Although *McDonnell Douglas* was a Title VII case, the same analysis is used in connection with ADA claims. *See Williams v. Widnall*, 79 F.3d 1003, 1005 (10th Cir. 1996).

reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). Under this framework, the plaintiff has the *initial* burden of articulating a prima facie case of discrimination. On summary judgment, a plaintiff must demonstrate a genuine issue for trial on a material matter. *See Morgan v. Hilti, Inc.*, 108 F.3d 1323 (10th Cir. 1997). To establish a prima facie case under the ADA, the plaintiff must show that 1) he is a disabled person under the meaning of the ADA; 2) he is qualified and able to perform the essential functions of the job, with or without reasonable accommodation; and 3) the employer terminated him under circumstances which give rise to an inference that the termination was based on his disability. *Morgan*, 108 F.3d at 1323. The final prong of the *Morgan* prima facie test requires the Plaintiff to present some "affirmative evidence" that the disability was a "determining factor" in the employer's decision. *See id.* (citing *Ennis v. National Association of Business and Education Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995)). This burden is "'not onerous,'" *Morgan*, 108 F.3d at 1323 (quoting *Burdine*, 450 U.S. at 253), but it is also "not empty or perfunctory." *Ennis*, 53 F.3d at 59. The plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, he would be entitled to judgment as a matter of law. *See Burdine*, 450 U.S. at 254.

In the present case, the disputed issue lies within the final prong of the prima facie case: whether the Plaintiff's proffered evidence gives rise to an inference that Presbyterian could have terminated him based on the Plaintiff's disability.[3] Therefore, the Court's analysis begins with whether the Plaintiff has presented "affirmative evidence" which establishes that a "determining factor" in Presbyterian's decision to terminate Mr. Mauk was that he was disabled.

---

[3] Defendant has conceded that the Plaintiff is considered disabled within the meaning of the ADA and has not argued that the Plaintiff was not qualified for the position. (Def's Mem. at 7).

The Plaintiff asserts the following facts give rise to an inference that he was terminated based on his disability: 1) the fact that he was terminated three and a half months after the disclosure of his disability and 2) that he started receiving poor ratings only after the disclosure of his disability. (Pl.'s Mem. at 12). The Defendant argues that the Plaintiff failed to establish a prima facie case because he failed to point to evidence which establishes that his vision was a "determining factor" in Presbyterian's decision to terminate him. (Def.'s Rep. Br. at 4).

The Plaintiff, in effect, argues that the adverse action of his termination is close enough to the disclosure of his disability to infer a discriminatory intent. However, the temporal proximity between Presbyterian's first knowledge of the Plaintiff's disability and the subsequent adverse actions is insufficient, standing alone, to raise an inference of discriminatory motive. Although the Tenth Circuit has determined that a retaliatory motive may be inferred when an adverse action closely follows protected activity, *Chavez v. City of Arvada*, 88 F.3d 861, 866 (10th Cir.1996), it must be *very closely* connected in time to the protected activity. If not, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation. *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997) (emphasis added). For example, the Court has held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. *Ramirez v. Oklahoma Department of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994). By contrast, the Court has also held that a three-month period, standing alone, is insufficient to establish causation. *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997). Thus, since the Plaintiff was terminated three and half months after the disclosure of his disability, the Court finds that it is insufficient and too speculative to infer a discriminatory based intent without any additional evidence.

In addition to his temporal argument, the Plaintiff argues that the fact he was accused of poor performance, (Pl.'s Mem. Br. at 12), and that he was treated differently only after he disclosed his disability, (Pl.'s Aff.), also lends to a discriminatory motive in his termination. This argument is also unpersuasive. The Plaintiff essentially argues that he received very good performance ratings from his former supervisor prior to the disclosure of his disability and that his ratings sharply declined after May of 1999, when he was hired for a full time position. The pertinent facts found within the record are as follows: Mr. Mauk states, within his affidavit, that once Ms. Vigil received notice of his disability in April of 1999, she began treating him differently, talked to him about minor mistakes, and blamed him for the mistakes of others (Pl.'s Aff.); Ms. Vigil states, within her deposition, that Mr. Mauk maintained very strong evaluations before he was hired in May of 1999 (Pl.'s Ex. B at 14-20); she also states that his behavior changed radically in June or July of 1999 (Pl.'s Ex. B at 39); and a "Job Offer Summary," written by Ms. Vigil in May of 1999 states that "Tim has been a temporary with us since January of '99. His accounting knowledge and his exceptional attention to detail is what is needed in our department." (Pl.'s Ex. H).

Based on this record, the Court finds there is insufficient evidence to give rise to an inference that Mr. Mauk was terminated based on his disability. In order to find that inference, the Plaintiff must point to "affirmative evidence" that his disability was a "determining factor" in the employer's decision to terminate his position. *See Morgan*, 108 F.3d at 1323. In this case, the Plaintiff relies on two conclusory statements. One statement, asserted by Mr. Mauk himself within his affidavit, alleges that once Presbyterian obtained knowledge of his disability, it started "treating him differently and giving him negative evaluations." (Pl.'s Aff.). Another statement, found within Ms. Vigil's deposition, comments on Mr. Mauk's "radically changed behavior" once Presbyterian hired Mr. Mauk as a full

time employee in May of 1999. (Pl.'s Ex. B at 39). These items in the record fail to meet the Plaintiff's prima facie burden that his disability was a "determining factor" in Presbyterian's decision to terminate his position. These statements, when read in conjunction with the "Job Offer Summary," dated May 10, 1999, are unconvincing. The Plaintiff essentially asserts that his evaluations turned negative once Ms. Vigil learned of his disability. However, the record clearly indicates that the Plaintiff first disclosed his disability at his interview with Ms. Vigil in April of 1999, (Pl.'s Aff. ¶ 5), and that, one month later, Ms. Vigil made a very positive recommendation to hire him on a full-time basis. (Pl.'s Ex. H). She states that Mr. Mauk's "accounting knowledge and his exceptional attention to detail is what is needed in our department." (Pl.'s Ex. H). Without any additional evidence to supplement the Plaintiff's conclusory statements regarding the negative evaluations[4] and his argument based on temporal proximity, the Plaintiff fails to meet the prima facie burden.

In order to comply with the Court's long standing practice to "draw all reasonable inferences in favor of the non-moving party," *See Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097 (2000), this Court has thoroughly examined the record to find sufficient evidence that would shoulder the Plaintiff's initial prima facie burden. This burden is "not onerous" nor is it "empty or perfunctory." Plaintiff's affirmative evidence does not rise above the perfunctory. He plainly fails to present "affirmative evidence" that, if the trier of fact finds it credible, and the employer remains silent, he would be entitled to judgment as a matter of law. *See Burdine*, 450 U.S. at 254; *see also Butler v. City of Prairie Village*, 172 F.3d 736, 749-50 (10th Cir. 1999).[5]

---

[4] These alleged negative evaluations are not part of the record.

[5] Unlike *Butler*, where the District Court was reversed for granting summary judgment based on the Plaintiff's failure to establish a prima facie case, the record in this case is devoid of evidence that may reflect an inference of discrimination. In *Butler*, the Tenth Circuit stated that temporal evidence, evidence of declining evaluations, *plus* additional circumstantial evidence of disparate treatment is sufficient to satisfy the initial burden

Therefore, since the Plaintiff fails to demonstrate a genuine issue as to a material fact of discrimination in order to carry his burden of establishing a prima facie case, the Court need not analyze whether the Defendant has articulated some legitimate, nondiscriminatory reason for the employee's termination nor whether there are reasons offered that would suggest it was pretextual.

Therefore, after reviewing the pertinent law, standards and the record to date, the Court finds that the Plaintiff has failed to establish an inference of discriminatory intent in order to satisfy his burden of proving a prima facie case. Therefore, the motion for summary judgment with respect to Plaintiffs claim based on the ADA will be granted.[6]

### B. Is the Defendant entitled to Summary Judgment with Respect to Plaintiff's claim based on Breach of Implied Contract?

Defendant filed a Motion for Summary Judgment on Plaintiff's Breach of Implied Contract on August 11, 2000 (*Doc. 57*). Plaintiff failed to serve or file a response in opposition to Defendant's motion within the fourteen-day period allowed under the local rules. D.N.M.L.R. Civ. 7.5(b). However, the Plaintiff asserted an argument based on his claim for breach of implied contract within his Response to Defendant's Motion for Summary Judgment on Plaintiff's ADA Claim on August 8, 2000.

The Defendant argues within its Memorandum brief that plaintiff was an "at-will" employee and that he had no enforceable employment agreement requiring cause for termination and/or certain termination procedures. (Def's Mem. Br. Contract Claims at 5). The Plaintiff asserts that the

---

of a prime facie case under the *McDonnell Douglas* standard. *See Butler*, 172 F.3d at 749. However, in this case, not only does the Plaintiff fail to assert any additional evidence as a basis for the prima facie case, there is no such additional circumstantial evidence within the record to suggest disparate treatment.

[6]    Even if this analysis were undertaken, based on the record before the Court, there is insufficient evidence to raise an issue of material fact as to pretext.

10

employee handbook constitutes an implied employment contract and that pursuant to the equal treatment of those with disabilities provision, Presbyterian had an implied contractual duty to provide progressive discipline and notice to employees before they were terminated.

Under New Mexico law, an implied contract can arise from an employment manual or handbook. *See*, *e.g.*, *Forrester v. Parker*, 93 N.M. 781, 782, 606 P.2d 191, 192 (1980) (citing *Trujillo v. Chavez*, 76 N.M. 703, 417 P.2d 893 (1966). Although the New Mexico State Courts recognize that a personnel policy may evidence an implied employment contract, the courts maintain that "employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract." *See Chavez v. Manville Products Corp.*, 777 P.2d 371, 374 (N.M. 1989)(citing *Lukoski v. Sandia Indian Management Co.*,106 N.M.664, 666, 748 P.2d 507,509 (1988)). To establish that an employment manual creates contractual obligations, the employee must show that the employer's actions manifest to a reasonable person an intent to be bound by the provisions of the document. *See e.g. Chavez*, 777 P.2d at 374.

The employment manual at issue here contains a provision stating that the "Handbook is not an express or implied contract, or any part of an express or implied contract." (Ex. 6 at 3.1). It is quite clear that the Defendant did not intend the Handbook to be an employee contract. The burden is on the Plaintiff to prove differently. *See Kiedrowski v. Citizens Bank*, 893 P.2d 468, 471  (N.M. Ct. App. 1995). Since it is clearly written in the Handbook that such provisions are not part of an express or implied contract, the Plaintiff is bound to such terms since he signed the agreement unless he can show an issue of fact for resolution by the jury. *See Forrester*, 93 N.M. at 782.  The Plaintiff failed to produce any other evidence of Presbyterian's conduct that would manifest an intent to be

bound by the provisions of the document. Therefore, the motion for summary judgment with respect to Plaintiff's claim based on breach of implied contract will be granted.

THEREFORE, IT IS ORDERED that Defendant's Motion for Summary Judgment, filed May 1, 2000 (*Doc. 18*), is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment on Plaintiff's Breach of Implied Contract Claim, filed August 11, 2000 (*Doc. 57*), is also GRANTED.

**IT IS SO ORDERED**.

_____
**LESLIE C. SMITH**
**United States Magistrate Judge**